**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, STATE OF ALABAMA, and STATE OF LOUISIANA, | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action Case No. |
| v. | ) ) | **COMPLAINT** |
| SHELL CHEMICAL LP, | ) ) | |
| Defendant. | ) ) ) | |

The United States of America, by the authority of the Attorney General of the United

States and through the undersigned attorneys, acting at the request of the Administrator of the

United States Environmental Protection Agency ("EPA"); the State of Alabama; and the State of

Louisiana, through the Louisiana Department of Environmental Quality ("LDEQ"), file this

Complaint and allege the following:

## NATURE OF ACTION

1.      This is a civil action brought by the United States, the State of Alabama, and the State of

Louisiana ("Plaintiffs") against Shell Chemical LP ("Shell") under Sections 167 and 113(b) of

the Clean Air Act ("CAA" or "the Act"), 42 U.S.C. §§ 7477 and 7413(b), for alleged

environmental violations at Shell's petroleum refineries located in Saraland, Alabama, and St.

Rose, Louisiana (collectively the "Refineries").

2.      Shell's Refineries have violated and/or continue to violate the following environmental

statutes and regulations which are applicable to the petroleum refining industry:

       a.     Prevention of Significant Deterioration ("PSD") requirements found at Part C of Subpart I of the CAA, 42 U.S.C. § 7475, and the implementing regulations promulgated thereunder at 40 C.F.R. § 52.21 (the "PSD Rules") as well as portions of the applicable State Implementation Plans ("SIPs") and related rules adopted by the State of Alabama and the State of Louisiana as required under 40 C.F.R. §§ 51.165, 51.166 and 52.24 ("PSD/NSR Requirements"); for heaters and boilers for nitrogen oxide ("$NO_x$"), sulfur dioxide ("$SO_2$"), carbon monoxide ("CO") and particulate matter ("PM");

       b.     New Source Performance Standards ("NSPS") found at 40 C.F.R. Part 60, Subparts A and J, under Section 111 of the CAA, 42 U.S.C. § 7411 ("Refinery NSPS Regulations"), for sulfur recovery plants and fuel gas combustion devices;

       c.     Leak Detection and Repair ("LDAR") requirements promulgated pursuant to Sections 111 and 112 of the CAA, 42 U.S.C. §§ 7411 and 7412, and found at 40 C.F.R. Part 60 Subparts VV and GGG, 40 C.F.R. Part 61, Subparts J and V, and 40 C.F.R. Part 63, Subparts F, H, and CC (the "LDAR Regulations");

       d.     National Emission Standards for Hazardous Air Pollutants ("NESHAPs") for Benzene Waste Operations promulgated pursuant to Section 112(e) of the CAA, 42 U.S.C. § 7412(e) and found at 40 C.F.R. Part 61, Subpart FF ("National Emission Standard for Benzene Waste Operations");

  3.     Plaintiffs seek an injunction ordering Shell to comply with the above statutes and the laws and regulations promulgated thereunder, and civil penalties for Shell's past and ongoing

violations.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of this action and over the parties

pursuant to 28 U.S.C. §§ 1331, 1345, 1355, 1367, and 1395, and Sections 113(b) and 167 of the

CAA, 42 U.S.C. §§ 7413(b) and 7477.

5.      Because the principal place of business of Defendant Shell Chemical LP is located in this

judicial district, venue is proper in the Southern District of Texas pursuant to Section 113(b) of

the CAA, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b) and (c), and 1395(a).

## AUTHORITY AND NOTICE TO STATES

6.      Authority to bring this action is vested in the United States Department of Justice

pursuant to Sections 113(b) and 305 of the CAA, 42 U.S.C. §§ 7413(b) and 7605, and 28 U.S.C.

§§ 516 and 519.

7.      Pursuant to Section 113(a)(1) of the CAA, 42 U.S.C. § 7413(a)(1), notice of the

violations of the Alabama and Louisiana SIPs that are alleged in this Complaint have been given

to the States of Alabama and Louisiana at least thirty (30) days prior to the filing of this

Complaint.

8.      Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), notice of the

commencement of this action has been given to the appropriate Alabama and Louisiana state air

pollution control agencies.

## DEFENDANT

9.      Shell Chemical LP is organized under the laws of the State of Delaware.  Shell Chemical

LP owns and operates a refinery with a crude oil capacity of 100,000 barrels per day which is

located at 400 Industrial Parkway Extension East, in Saraland, Alabama.  Shell Chemical LP

owns and operates a refinery with a crude oil capacity of at least 40,000 barrels per day which is

located at 11842 River Road in St. Rose, Louisiana.

10.     Shell Chemical LP is a "person" as defined in Section 302(e) of the CAA, 42 U.S.C. §

7602(e) and in the applicable federal and state regulations promulgated pursuant to this statute.

**STATUTORY AND REGULATORY BACKGROUND**
**CAA REQUIREMENTS**

11.     The CAA established a regulatory scheme designed to protect and enhance the quality of

the nation's air so as to promote the public health and welfare and the productive capacity of its

population.  Section 101(b)(1) of the Act, 42 U.S.C. § 7401(b)(1).

12.     Section 109 of the Act, 42 U.S.C. § 7409, requires the Administrator of EPA to

promulgate regulations establishing primary and secondary national ambient air quality

standards ("NAAQS" or "ambient air quality standards") for certain criteria air pollutants.  The

primary NAAQS are to be adequate to protect the public health, and the secondary NAAQS are

to be adequate to protect the public welfare, from any known or anticipated adverse effects

associated with the presence of the air pollutant in the ambient air.

13.     Section 110 of the Act, 42 U.S.C. § 7410, requires each state to adopt and submit to EPA

for approval a State Implementation Plan ("SIP") that provides for the attainment and

maintenance of the NAAQS.  The Alabama and Louisiana state SIPs have been approved.

14.     Under Section 107(d) of the Act, 42 U.S.C. § 7407(d), each state is required to designate

those areas within its boundaries where the air quality is better or worse than the NAAQS for

each criteria pollutant, or where the air quality cannot be classified due to insufficient data.

These designations have been approved by EPA and are located at 40 C.F.R. Part 81.  An area

4

that meets the NAAQS for a particular pollutant is classified as an "attainment" area; one that

does not is classified as a "non-attainment" area.

### Prevention of Significant Deterioration/New Source Review

15.    Part C of Title I of the Act, 42 U.S.C. §§ 7470-7492, sets forth requirements for the

prevention of significant deterioration of air quality in those areas designated as attaining the

NAAQS standards.  These requirements are designed to protect public health and welfare, to

assure that economic growth will occur in a manner consistent with the preservation of existing

clean air resources, and to assure that any decision to permit increased air pollution is made only

after careful evaluation of all the consequences of such a decision and after public participation

in the decision-making process.  These provisions are referred to herein as the "PSD" program.

16.    Section 165(a) of the Act, 42 U.S.C. § 7475(a), prohibits the construction and subsequent

operation of a major emitting facility in an area designated as attainment unless a PSD permit

has been issued.  Section 169(1) of the Act, 42 U.S.C. § 7479(1), defines "major emitting

facility" as a source with the potential to emit 250 tons per year (tpy) or more of any air

pollutant.

17.    As set forth at 40 C.F.R. § 52.21(k), the PSD program generally requires a person who

wishes to construct or modify a major emitting facility in an attainment area to demonstrate,

before construction commences, that construction of the facility will not cause or contribute to

air pollution in violation of any ambient air quality standard or any specified incremental

amount.

18.    As set forth at 40 C.F.R. § 52.21(a)(i), any major emitting source in an attainment area

that intends to construct a major modification must first obtain a PSD permit.  "Major

modification" is defined at 40 C.F.R. § 52.21(b)(2)(i) as meaning any physical change in or

5

change in the method of operation of a major stationary source that would result in a significant

net emission increase of any criteria pollutant subject to regulation under the Act.  "Significant"

is defined at 40 C.F.R. § 52.21(b)(23)(i) in reference to a net emissions increase or the potential

of a source to emit any of the following criteria pollutants, at a rate of emissions that would

equal or exceed any of the following: for ozone, 40 tons per year of organic compounds

("VOCs"); for carbon monoxide ("CO"), 100 tons per year; for nitrogen oxides ("$NO_x$"), 40 tons

per year; for sulfur dioxide ("$SO_2$" ), 40 tons per year, and for particulate matter ("PM"), 25 tons

per year (hereinafter "criteria pollutants").

19.     As set forth at 40 C.F.R. § 52.21(j), a new major stationary source or a major

modification in an attainment area shall install and operate best available control technology

("BACT") for each pollutant subject to regulation under the Act that it would have the potential

to emit in significant quantities.

20.     Section 161 of the Act, 42 U.S.C. § 7471, requires SIPs to contain emission limitations

and such other measures as may be necessary, as determined under the regulations promulgated

pursuant to these provisions, to prevent significant deterioration of air quality in attainment

areas.

21.     A state may comply with Section 161 of the Act either by being delegated by EPA the

authority to enforce the federal PSD regulations set forth at 40 C.F.R. § 52.21, or by having its

own PSD regulations approved as part of its SIP by EPA, which must be at least as stringent as

those set forth at 40 C.F.R. § 51.166.

22.     Pursuant to PSD regulations, any owner or operator who commences construction or

modification of a major source without applying for and receiving approval for such construction

or modification is subject to an enforcement action. 40 C.F.R. § 51.166.

23.     Pursuant to Section 113(b)(1) of the CAA, 42 U.S.C. § 7413(b)(1), the violation of any requirement or provision of an applicable implementation plan is a violation of the CAA.

24.     Whenever any person has violated, or is in violation of, any requirement or prohibition of any SIP, Section 113(b) of the CAA, 42 U.S.C. § 7413(b), authorizes the Administrator to initiate a judicial enforcement action for a permanent or temporary injunction and/or for a civil penalty of up to $25,000 per day for each violation of the CAA.  Under the Debt Collection Improvement Act of 1996, as implemented by the Civil Monetary Penalties Inflation Rule, 40 C.F.R. Part 19, as amended, penalties of not more than $27,500 may be assessed for each violation that occurs after January 30, 1997 through March 15, 2004, penalties of not more than $32,500 may be assessed for each violation that occurs after March 15, 2004 through January 12, 2009, and penalties of not more than $37,500 may be assessed for each violation that occurs after January 12, 2009.  See 73 Fed. Reg. 75, 340 (Dec. 11, 2008).

### Flaring and New Source Performance Standards

25.     Section 111(b)(1)(A) of the CAA, 42 U.S.C. § 7411(b)(1)(A), requires the Administrator of EPA to publish a list of categories of stationary sources that emit or may emit any air pollutant.  The list must include any categories of sources which are determined to cause or significantly contribute to air pollution which may endanger public health or welfare.

26.     Section 111(b)(1)(B) of the CAA, 42 U.S.C. § 7411(b)(1)(B), requires the Administrator of the EPA to promulgate regulations establishing federal standards of performance for new sources of air pollutants within each of these categories.  "New Sources" are defined as stationary sources, the construction or modification of which is commenced after the publication of the regulations or proposed regulations prescribing a standard of performance applicable to such source.  42 U.S.C. § 7411(a)(2).

27.     Pursuant to Section 111(b)(1)(A) of the CAA, 42 U.S.C. § 7411(b)(1)(A), EPA has identified petroleum refineries as one category of stationary sources that cause, or contribute significantly to, air pollution that may reasonably be anticipated to endanger public health or welfare.

28.     Pursuant to Section 111(b)(1)(B) of the CAA, 42 U.S.C. § 7411(b)(1)(B), EPA has promulgated New Source Performance Standards ("NSPS") for various industrial categories, including petroleum refineries.  NSPS requirements for petroleum refineries are codified in 40 C.F.R. Part 60, Subpart J, §§ 60.100-60.109.

29.     The provisions of 40 C.F.R. Part 60 Subpart J apply to specified "affected facilities," including, *inter alia*, fuel gas combustion devices that commenced construction or modification after June 11, 1973.  40 C.F.R. § 60.100(a)(b).

30.     40 C.F.R. § 60.104(a)(1) prohibits the burning in any fuel gas combustion device of any fuel gas that contains hydrogen sulfide in excess of 230 milligrams per dry standard cubic meter, or, stated in terms of grains per dry standard cubic foot, 0.10.  The combustion within a flare of process upset gases or fuel gas that is released to the flare as a result of relief valve leakage or other emergency malfunctions is exempt from the emission limit of 40 C.F.R. § 60.104(a)(1).

31.     Pursuant to Section 111(b) of the CAA, 42 U.S.C. § 7411(b), EPA has promulgated general NSPS provisions, codified at 40 C.F.R. Part 60, Subpart A, §§ 60.1-60.19, that apply to owners or operators of any stationary source that contains an "affected facility" subject to regulation under 40 C.F.R. Part 60.

32.     40 C.F.R. § 60.11(d) requires that at all times, including periods of startup, shutdown, and malfunction, owners and operators shall, to the extent practicable, maintain and operate any affected facility including associated air pollution control equipment in a manner consistent with

8

good air pollution control practice for minimizing emissions.

33.     Section 111(e) of the CAA, 42 U.S.C. § 7411(e), prohibits the operation of any new

source in violation of an NSPS applicable to such source.  Thus, a violation of an NSPS is a

violation of Section 111(e) of the CAA.

34.     Whenever any person has violated, or is in violation of, any requirement or prohibition of

any applicable New Source Performance Standard, Section 113(b) of the Act, 42 U.S.C. §

7413(b), authorizes the Administrator to initiate a judicial enforcement action for a permanent or

temporary injunction and/or for a civil penalty of up to $25,000 per day for each violation of the

CAA.  Under the Debt Collection Improvement Act of 1996, as implemented by the Civil

Monetary Penalties Inflation Rule, 40 C.F.R. Part 19, as amended, penalties of not more than

$27,500 may be assessed for each violation that occurs after January 30, 1997 through March 15,

2004, penalties of not more than $32,500 may be assessed for each violation that occurs after

March 15, 2004 through January 12, 2009, and penalties of not more than $37,500 may be

assessed for each violation that occurs after January 12, 2009.   See 73 Fed. Reg. 75, 340 (Dec.

11, 2008).

## Leak Detection and Repair

35.     Pursuant to Section 111 of the CAA, 42 U.S.C. § 7411, EPA promulgated NESHAPs for

VOCs in petroleum refineries at 40 C.F.R. Part 60, Subpart GGG.  Subpart GGG in turn,

incorporated many of the NSPS standards at 40 C.F.R. Part 60, Subpart VV.  Pursuant to Section

112 of the CAA, 42 U.S.C. § 7412, EPA promulgated emission standards for hazardous air

pollutants ("National Emission Standards for Hazardous Air Pollutants" or "NESHAPs") at

40 C.F.R. Part 61, and NESHAPs for source categories at 40 C.F.R. Part 63.  The relevant

NESHAPs are found at 40 C.F.R. Part 61, Subpart J (for equipment leaks of benzene) and

Subpart V (for equipment leaks); and 40 C.F.R. Part 63, Subpart F (for organic hazardous air pollutants from the synthetic organic chemical manufacturing industry), Subpart H (for organic hazardous air pollutants for equipment leaks) and Subpart CC (for hazardous air pollutants from petroleum refineries).

36.    The focus of the LDAR program is the refinery-wide inventory of all possible leaking equipment, the regular monitoring of that equipment to identify leaks, and the repair of leaks as soon as they are identified.

37.    Whenever any person has violated, or is in violation of, any requirement or prohibition of any applicable New Source Performance Standard or any applicable National Emission Standard for a Hazardous Air Pollutant, Section 113(b) of the CAA, 42 U.S.C. § 7413(b), authorizes the Administrator to initiate a judicial enforcement action for a permanent or temporary injunction and/or for a civil penalty of up to $25,000 per day for each violation of the CAA.  Under the Debt Collection Improvement Act of 1996, as implemented by the Civil Monetary Penalties Inflation Rule, 40 C.F.R. Part 19, as amended, penalties of not more than $27,500 may be assessed for each violation that occurs after January 30, 1997 through March 15, 2004, penalties of not more than $32,500 may be assessed for each violation that occurs after March 15, 2004 through January 12, 2009, and penalties of not more than $37,500 may be assessed for each violation that occurs after January 12, 2009.   See 73 Fed. Reg. 75, 340 (Dec. 11, 2008).

### Benzene Waste NESHAP

38.    The CAA requires EPA to establish emission standards for each "hazardous air pollutant" ("HAP") in accordance with Section 112 of the CAA, 42 U.S.C. § 7412.

39.    In March 1990, EPA promulgated national emission standards applicable to benzene-

containing waste waters.  Benzene is a listed HAP and a known carcinogen.  The benzene waste regulations are set forth at 40 C.F.R. Part 61 Subpart FF (National Emission Standard for Benzene Waste Operations).  Benzene is a naturally-occurring constituent of petroleum product and petroleum waste and is highly volatile.  Benzene emissions can be detected anywhere in a refinery where the petroleum product or waste materials are exposed to the ambient air.

40.     Pursuant to the Benzene waste NESHAP, refineries are required to tabulate the total annual benzene ("TAB") content in their wastewater.  If the TAB is over 10 Mg per year, the refinery is required to elect a control option for control of benzene.

41.     Whenever any person has violated, or is in violation of, any requirement or prohibition of any applicable National Emission Standard for a Hazardous Air Pollutant, Section 113(b) of the CAA, 42 U.S.C. § 7413(b), authorizes the Administrator to initiate a judicial enforcement action for a permanent or temporary injunction and/or for a civil penalty of up to $25,000 per day for each violation of the CAA.  Under the Debt Collection Improvement Act of 1996, as implemented by the Civil Monetary Penalties Inflation Rule, 40 C.F.R. Part 19, as amended, penalties of not more than $27,500 may be assessed for each violation that occurs after January 30, 1997 through March 15, 2004, penalties of not more than $32,500 may be assessed for each violation that occurs after March 15, 2004 through January 12, 2009, and penalties of not more than $37,500 may be assessed for each violation that occurs after January 12, 2009.   See 73 Fed. Reg. 75, 340 (Dec. 11, 2008).

## FIRST CLAIM FOR RELIEF

### (CAA PSD/NSR Violations at Heaters and Boilers)

42.     Paragraphs 1 through 41 are re-alleged and incorporated by reference as if fully set forth herein.

43.     At its Refineries, Shell conducts operations which involve the physical, thermal, and chemical separation of crude oil into marketable petroleum products.  Shell owns and operates heaters and boilers which are employed in the aforementioned processes.

44.     Based on information and belief, the Plaintiffs allege the following:

        a.     The petroleum refining processes employed by Shell at the Refineries result in emissions of significant quantities of criteria air pollutants, including $NO_x$, CO, PM, and $SO_2$.  The primary sources of these emissions are process heaters and boilers.

        b.      Each Refinery is a "major emitting facility," Section 169(1) of the CAA, 42 U.S.C. § 7479(1), which is a stationary source with the potential to emit 100 tons per year or more of any criteria air pollutant.  Shell's Refineries are major emitting facilities with the potential to emit in excess of 100 TPY of $NO_x$, PM, and $SO_2$, which are listed criteria air pollutants.

        c.     At all times relevant to this Complaint, both Refineries were located in areas designated as "Class II" under Section 162(b) of the Act, 42 U.S.C. § 7472(b), and that have attained the National Ambient Air Quality Standards for Ozone, of which VOCs and $NO_x$ are precursors, and $SO_2$, under Section 107(d) of the Act, 42 U.S.C. § 7407(d).

        d.     At all times relevant to the Complaint, and on numerous occasions since the commencement of operations, Shell has failed to fully and accurately identify the emissions

from its Refineries for one or more criteria pollutants.

        e.      During the time period relevant to this Complaint, Shell has modified its heaters and boilers at the Refineries.

        f.      Each modification was a "major modification" within the meaning of 40 C.F.R. § 52.21(b)(2) to existing major stationary sources that resulted in a significant net emissions increase of NOx and $SO_2$ from the heaters and boilers.

        g.      Since the initial construction or major modification of the heaters and boilers, each of the Refineries has been in violation of Section 165(a) of the CAA, 42 U.S.C. § 7475(a), and 40 C.F.R. § 52.21, and the corresponding state implementation plans, by failing to undergo PSD/NSR review for the heaters and boilers, by failing to obtain permits, and by failing to install the best available control technology for the control of those pollutants for which a significant net emissions increase occurred.

45.     Unless restrained by an Order of the Court, these violations of the CAA and the implementing regulations will continue.

46.     As provided in Sections 167 and 113(b) of the Act, 42 U.S.C. §§ 7413(b) and 7477, the violations set forth above subject Shell to injunctive liability and civil penalties of up to $25,000 per day for each violation of the CAA.  Under the Debt Collection Improvement Act of 1996, as implemented by the Civil Monetary Penalties Inflation Rule, 40 C.F.R. Part 19, as amended, penalties of not more than $27,500 may be assessed for each violation that occurs after January 30, 1997 through March 15, 2004, penalties of not more than $32,500 may be assessed for each violation that occurs after March 15, 2004 through January 12, 2009, and penalties of not more than $37,500 may be assessed for each violation that occurs after January 12, 2009.   See 73 Fed.

Reg. 75, 340 (Dec. 11, 2008).

## SECOND CLAIM FOR RELIEF
### (NSPS Violations at Sulfur Recovery Plant)

47.     The allegations in Paragraphs 1 through 41 are hereby re-alleged and incorporated by reference as if fully set forth herein.

48.     Shell is the "owner(s) or operator(s)," within the meaning of Section 111(a)(5) of the CAA, 42 U.S.C. § 7411(a)(5), and 40 C.F.R. § 60.2, of a Sulfur Recovery Plant ("SRP") at the Saraland, Alabama Refinery.

49.     The SRP is a "Claus Sulfur Recovery Plant" as defined in 40 C.F.R. § 60.101(i), and a "stationary source" within the meaning of Sections 111(a)(3) and 302(z) of the CAA, 42 U.S.C. §§ 7411(a)(3) and 7602(z).

50.     The SRP has a capacity of more than 20 long tons of sulfur per day.

51.     The SRP is an "affected facility" within the meaning of 40 C.F.R. §§ 60.2 and 60.100(a), and a "new source" within the meaning of Section 111(a)(2) of the CAA, 42 U.S.C. § 7411(a)(2).

52.     The SRP is subject to the General Provisions of the NSPS, 40 C.F.R. Part 60, Subpart A, and to the Standards of Performance for Petroleum Refineries, 40 C.F.R. Part 60, Subpart J or Ja.

53.     The SRP is subject to the emission limit set forth in 40 C.F.R. § 60.104(a)(2).

54.     Shell has emitted into the atmosphere gases containing in excess of: (a) 250 ppm by volume (dry basis) of $SO_2$ at zero percent excess air; or (b) 300 ppm by volume of reduced sulfur compounds, from the SRP, in violation of 40 C.F.R. § 60.104(a)(2) and Section 111(e) of the CAA, 42 U.S.C. § 7411(e).

55.     Unless restrained by an order of the Court, these violations of the CAA and the implementing regulations will continue.

56.     The violations set forth above subject Shell to injunctive liability and civil penalties up to $25,000 per day for each violation of the CAA.  Under the Debt Collection Improvement Act of 1996, as implemented by the Civil Monetary Penalties Inflation Rule, 40 C.F.R. Part 19, as amended, penalties of not more than $27,500 may be assessed for each violation that occurs after January 30, 1997 through March 15, 2004, penalties of not more than $32,500 may be assessed for each violation that occurs after March 15, 2004 through January 12, 2009, and penalties of not more than $37,500 may be assessed for each violation that occurs after January 12, 2009. See 73 Fed. Reg. 75, 340 (Dec. 11, 2008).

## THIRD CLAIM FOR RELIEF
### (CAA/NSPS Violations at Flaring Devices and Heaters and Boilers)

57.     The allegations in Paragraphs 1 through 41 are hereby re-alleged and incorporated by reference as if fully set forth herein.

58.     Shell is an "owner or operator," within the meaning of Section 111(a)(5) of the CAA, 42 U.S.C. § 7411(a)(5), and 40 C.F.R. § 60.2, of flaring devices and heaters and boilers located at the Refineries.

59.     The flaring devices and heaters and boilers are "fuel gas combustion devices" as defined in 40 C.F.R. § 60.101(g), and "stationary sources" within the meaning of Sections 111(a)(3) and 302(z) of the CAA, 42 U.S.C. §§ 7411(a)(3) and 7602(z).

60.     The flaring devices and heaters and boilers are "affected facilities" within the meaning of 40 C.F.R. §§ 60.2 and 60.100(a), and "new sources" within the meaning of Section 111(a)(2) of the CAA, 42 U.S.C. § 7411(a)(2).

61.     The flaring devices and heaters and boilers are subject to the emission limitation set forth in 40 C.F.R. § 60.104(a)(1).

62.     Shell has and is burning in the flaring devices and heaters and boilers at the Refineries fuel gas that contains hydrogen sulfide in excess of 230 milligrams per dry standard cubic meter, in violation of 40 C.F.R. § 60.104(a)(1) and Section 111(e) of the CAA, 42 U.S.C. § 7411(e).

63.     Unless restrained by an order of the Court, these violations of the CAA and the implementing regulations will continue.

64.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), and Section 167 of the Act, 42 U.S.C. § 7477, the violations set forth above subject Shell to injunctive liability and civil penalties of up to $25,000 per day for each violation of the CAA.  Under the Debt Collection Improvement Act of 1996, as implemented by the Civil Monetary Penalties Inflation Rule, 40 C.F.R. Part 19, as amended, penalties of not more than $27,500 may be assessed for each violation that occurs after January 30, 1997 through March 15, 2004, penalties of not more than $32,500 may be assessed for each violation that occurs after March 15, 2004 through January 12, 2009, and penalties of not more than $37,500 may be assessed for each violation that occurs after January 12, 2009.   See 73 Fed. Reg. 75, 340 (Dec. 11, 2008).

### FOURTH CLAIM FOR RELIEF
**(CAA/NSPS:  40 C.F.R. § 60.11(d))**
**(Failing to Operate and Maintain the**
**Heaters and Boilers and the Flaring Devices**
**in a Manner Consistent with Good Air Pollution Control Practice)**

65.     The allegations in Paragraphs 1 through 41 are hereby re-alleged and incorporated by reference as if fully set forth herein.

66.     Shell has emitted and is emitting unpermitted quantities of $NO_x$ and $SO_2$ from heaters and boilers at the Refineries.  These pollutants are and were emitted under circumstances that do not represent good air pollution control practices, in violation of 40 C.F.R. § 60.11(d).

67.     Unless restrained by an order of the Court, these violations of the Act and the

implementing regulations will continue.

68.    As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), and Section 167 of the

Act, 42 U.S.C. § 7477, the violations set forth above subject Shell to injunctive relief and civil

penalties of up to $25,000 per day for each violation of the CAA.  Under the Debt Collection

Improvement Act of 1996, as implemented by the Civil Monetary Penalties Inflation Rule, 40

C.F.R. Part 19, as amended, penalties of not more than $27,500 may be assessed for each

violation that occurs after January 30, 1997 through March 15, 2004, penalties of not more than

$32,500 may be assessed for each violation that occurs after March 15, 2004 through January 12,

2009, and penalties of not more than $37,500 may be assessed for each violation that occurs after

January 12, 2009.  See 73 Fed. Reg. 75, 340 (Dec. 11, 2008).

## FIFTH CLAIM FOR RELIEF
### (Benzene Waste NESHAP)

69.    The allegations in Paragraphs 1 through 41 are hereby re-alleged and incorporated by

reference as if fully set forth herein.

70.    Upon information and belief, Shell's Saraland, Alabama Refinery has a Total Annual

Benzene ("TAB") of over 10 megagrams per year, and has been subject to the requirements of

the Benzene Waste NESHAP regulations set forth at 40 C.F.R. § 61.342.

71.    Upon information and belief, Shell's Saraland, Alabama Refinery has failed to comply

with the requirements of 40 C.F.R. § 61.342, by exceeding the benzene quantity limits set forth

therein, in violation of the Benzene Waste NESHAP regulations and the Act.

72.     Shell's St. Rose, Louisiana Refinery has failed to comply with the requirements of the Benzene Waste NESHAP that are applicable to facilities with a TAB of less than 10 megagrams per year.

73.     Unless restrained by an order of the Court, these violations of the Act and the implementing regulations will continue.

74.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), and Section 167 of the Act, 42 U.S.C. § 7477, the violations set forth above subject Shell to injunctive liability and civil penalties of up to $25,000 per day for each violation of the CAA.  Under the Debt Collection Improvement Act of 1996, as implemented by the Civil Monetary Penalties Inflation Rule, 40 C.F.R. Part 19, as amended, penalties of not more than $27,500 may be assessed for each violation that occurs after January 30, 1997 through March 15, 2004, penalties of not more than $32,500 may be assessed for each violation that occurs after March 15, 2004 through January 12, 2009, and penalties of not more than $37,500 may be assessed for each violation that occurs after January 12, 2009.  See 73 Fed. Reg. 75, 340 (Dec. 11, 2008).

## SIXTH CLAIM FOR RELIEF
### (Leak Detection and Repair Requirements)

75.     The allegations in Paragraphs 1 through 41 are re-alleged and incorporated by reference as if fully set forth herein.

76.     The Refineries are required under 40 C.F.R. Part 60, Subpart GGG, to comply with standards set forth at 40 C.F.R. § 60.592, which references standards set forth at 40 C.F.R. §§ 60.482-1 to 60.482-10 and alternative standards set forth at 40 C.F.R. §§ 60.483-1 to 60.483-2 (Subpart VV) for certain refinery equipment in light liquid and gas and/or vapor service, constructed or modified after January 4, 1983 but before November 7, 2006.

18

77.     Pursuant to 40 C.F.R. § 60.483-2(b)(1), an owner or operator of valves in light liquid and gas and/or vapor service must initially comply with the leak detection monitoring and repair requirements set forth in 40 C.F.R. § 60.482-7, including the use of Standard Method 21 to monitor for such leaks.

78.     Pursuant to 40 C.F.R. Part 61 Subpart J, Shell is required to comply with the requirements set forth in 40 C.F.R. Part 61, Subpart V, for certain refinery equipment in light liquid and gas and/or vapor service.

79.     Shell is required to comply with the requirement of 40 C.F.R. Part 63, Subpart CC for certain refinery equipment containing hazardous air pollutants.

80.     Shell has failed to accurately monitor the valves and other components in light liquid and gas and/or vapor service at the Refineries as required by Standard Method 21, has failed to report the valves and other components in light liquid and gas and/or vapor service that were leaking, and has failed to repair all leaking VOC valves and other components in light liquid and gas and/or vapor service in a timely manner.

81.     The acts or omissions of Shell referred to in the preceding Paragraphs constitute violations of 40 C.F.R. Part 60, Subparts GGG and VV; 40 C.F.R. Part 61, Subparts J and V; and 40 C.F.R. Part 63, Subparts F, H, and CC.

82.     Unless restrained by an order of the Court, these violations of the Act and the implementing regulations will continue.

83.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), and Section 167 of the Act, 42 U.S.C. § 7477, the violations set forth above subject Shell to injunctive liability and civil penalties of up to $25,000 per day for each violation of the CAA.  Under the Debt Collection

Improvement Act of 1996, as implemented by the Civil Monetary Penalties Inflation Rule, 40

C.F.R. Part 19, as amended, penalties of not more than $27,500 may be assessed for each

violation that occurs after January 30, 1997 through March 15, 2004, penalties of not more than

$32,500 may be assessed for each violation that occurs after March 15, 2004 through January 12,

2009, and penalties of not more than $37,500 may be assessed for each violation that occurs after

January 12, 2009.  See 73 Fed. Reg. 75, 340 (Dec. 11, 2008).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, the United States, the State of Alabama, and the State of

Louisiana, respectfully requests that this Court:

1.  Order Shell, at both Refineries, to comply immediately with the statutory and
regulatory requirements cited in this Complaint, under the CAA;

2.  Order Shell, at both Refineries, to take appropriate measures to mitigate the
effects of its violations;

3.  Assess civil penalties against Shell for up to the maximum amounts provided
in the applicable statutes; and

4.  Grant the United States such other relief as this Court deems just and proper.

Respectfully submitted,


FOR THE UNITED STATES:


IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

20

_____/s/ Amy R. Gillespie_____
AMY R. GILLESPIE
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources
Division
United States Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
(202) 616-8754


JOSE ANGEL MORENO
United States Attorney

KEITH EDWARD WYATT
Assistant United States Attorney
Chief, Civil Division
U.S. Attorney's Office
919 Milam Street, Suite 1500
P.O. Box 61129
Houston, TX  77208
Tel.  (713) 567-9713
Fax  (713) 718-3303

OF COUNSEL:

TERESA DYKES
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
Washington, D.C.  20460

MARLENE TUCKER
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region IV
Atlanta, GA  30303

JAN GERRO
Senior Enforcement Counsel
U.S. Environmental Protection Agency, Region VI
Dallas, TX  75202

FOR THE STATE OF ALABAMA:


TROY R. KING, ATTORNEY GENERAL


By: _____        Date: 1/25/10
Robert D. Tambling
Assistant Attorney General
500 Dexter Avenue
Montgomery, AL  36130-1463


FOR THE ALABAMA DEPARTMENT OF ENVIRONMENTAL MANAGEMENT:


JOHN P. HAGOOD, DIRECTOR
By: _____        Date: 1-25-10
S. Shawn Sibley
Associate General Counsel
Alabama Department of Environmental Management
P.O. Box 301463
Montgomery, AL 36130-1463

FOR THE STATE OF LOUISIANA:


Respectfully submitted,
The  Louisiana Department of Environmental Quality

Herman Robinson, Executive Counsel (#2077)



By: _____          Date: 12-18-09
DWANA KING, Attorney (Bar Roll # 20590)
Christopher A. Ratcliff, Attorney Supervisor (#18675)
Office of the Secretary
Legal Affairs Division
Louisiana Department of Environmental Quality
Post Office Box 4302
Baton Rouge, Louisiana  70821-4302

24